## LOVE *vs.* CROOK ET AL.

[BILL IN EQUITY FOR SPECIFIC RECOVERY OF SLAVES.]

1. *Executory contract of sale construed.*—Articles of agreement, bipartite, whereby the party of the first part " *doth hereby agree to bargain, sell, and convey,*" unto the party of the second part, certain slaves, in consideration that the party

of the second part "*hereby delivers to the said*" party of the first part, "*by order, all his right, title, and interest, both in law and equity, to the sum of* $2,000*", part of an amount just recovered from the United States by an agent of the party of the second part; and conditioned, that if the said party of the second part "*will, by any means, with or without suit, either in law or equity, enable the said*" party of the first part "*to recover said sum of* $2,000*, with lawful interest,*" from said agent, then the said party of the first part "binds himself, his heirs, executors, &c., *that the above bill of sale shall be absolute, and shall convey unto him, his heirs, executors, &c., all right, title, and interest in said slaves; otherwise, to be void and of no effect,*"—*held* neither a mortgage, nor an absolute sale, but an agreement to sell, which did not, *per se,* pass the legal title to the slaves.

2. *Equity jurisdiction, where remedy at law is plain, adequate, and complete.*—If the owner of slaves allows them to go into the possession of an intended purchaser, under an executory contract of sale, which does not pass the legal title, he may recover them by action of detinue; but whether he proceeds for the slaves themselves, or for their agreed price, his remedy is at law, and he cannot come into equity.

APPEAL from the Chancery Court of Benton.

Heard before the Hon. JAMES B. CLARK.

THIS suit was founded on the following contract :—

"Articles of agreement, made and entered into this 18th of March, 1844, between Thomas Raper, of the county of Cherokee and State of North Carolina, of the one part, and J. R. Love, of the county of Hayward and State of North Carolina, of the other part, *witnesseth,* That, for the consideration hereinafter mentioned, the said James R. Love doth hereby agree to bargain, sell, and convey unto the said Thomas Raper three negro slaves, named Perry, aged about twenty-five years old, Mary, his wife, aged about twenty-two years old, and Harrison, a boy, aged about three years old; all of which negroes the said James R. Love will warrant to be (*sound?*) and slaves for life. The consideration is as follows : The said Thomas Raper hereby delivers to the said James R. Love, by order, all his right, title, and interest, both in law and equity, to the sum of two thousand dollars; being part of an amount of money recovered by Wm. H. Thomas, as agent for the said Thomas Raper, from the United States Government, on certain claims which the said Thomas Raper held upon the said Government under the Cherokee treaty of one thousand eight hundred and seventeen and nineteen, and one thousand eight hundred and thirty-five and

40

thirty-six; as by the record of the commissioners for the adjudication of the Cherokee claims, when sitting in the State of Tennessee, and on file in some of the departments of the United States Government, will more fully appear. Now, if the said Thomas Raper will, by any means, with or without suit, either in law or equity, enable the said James R. Love to recover from the above-named Wm. H. Thomas the above-named sum of two thousand dollars, with lawful interest from this date, then the said J. R. Love binds himself, his heirs, executors, &c., that the above bill of sale shall be absolute, and shall convey unto the said Thomas Raper, his heirs, executors, &c., all right, title, and interest in the above-named slaves, Perry, Mary, and *Thomas* (?); otherwise, to be void (and) of no effect.

"Signed, sealed, and delivered in presence of us, the attesting witnesses, the day and date above written.

Attest: Wm. Welch, }    J. R. LOVE,    [Seal.]
        B. Turner. }    THOS. RAPER,    [Seal.]"

The bill was filed by James R. Love, the appellant, and alleged the execution of the contract above set out, on the day of its date, in North Carolina; that it was expressly understood between the parties, at the time the contract was made, that the sale of the slaves was not absolute, until and unless said sum of money was paid, and that no title to said slaves was thereby given or to enure to the said Raper, until and unless said money was paid; that complainant, confiding in Raper's good faith, and believing that the money would be paid by said Thomas, suffered Raper to take said slaves into his possession; that said Thomas was then in Washington city, and complainant forwarded said order to him at that place; that said order was presented to Thomas for payment on the 29th April, 1844, and payment was refused by him; that complainant, immediately afterwards, notified Raper of the non-payment of said order, but he failed and refused to enable complainant to recover the same of Thomas; that complainant was induced by the statements and representations of Thomas to await his return from Washington, when he was assured that all things would be satisfactorily adjusted; that Thomas did not return from Washington until after the expiration of three or four years, and he then averred

that he did not owe Raper anything, and that he had paid him all that was owing to him ; that complainant thereupon filed a bill in equity against said Raper and Thomas, in the Circuit Court of Hayward county, North Carolina, which suit is still pending.

The bill further alleges, that said Raper, so soon as said bill was filed, pretended to sell said negroes to James H. Bryson and Jesse B. Brooks, both of said Cherokee county, North Carolina, who immediately ran them off by stealth to Benton county, Alabama, and there sold them to John M. Crook, in whose possession they now are ; that said Raper and Bryson are insolvent, and the condition of Brooks is unknown to complainant ; that said slaves were thus disposed of by them with the fraudulent intention of depriving complainant of his just rights, and of converting said slaves to their own use ; and complainant charges, from the inadequacy of price paid by said Crook, that he must have been cognizant of this fraud and the consequent defect of title to said slaves.

The prayer of the bill is for a temporary injunction, to prevent the removal of the slaves out of the jurisdiction of the court,—that, on final hearing, they may be set over and delivered to complainant ; and the general prayer for other and further relief is added.

The cause was submitted to Chancellor Walker, on motion to dismiss the bill for want of equity ; which motion he sustained, but granted the complainant leave to amend his bill. The grounds of the decree were, that the contract shown by the writing, in connection with the allegations of the bill, was not a mortgage, but a sale upon condition ; and that complainant's remedy, therefore, was at law. In support of this position, the chancellor cited the following cases : Mount v. Harris, 1 Sm. & Mar. 194; Barrett v. Pritchard, 2 Pick. 512; 4 Mason, 283; Story on Sales, § 400; Sewall v. Henry, 9 Ala. 85. He further held, that allegations might be added to the bill, which would justify the inference that the contract was intended as a mortgage. At the next term of the court, the complainant presented a proposed amendment of his bill in another particular ; but Chancellor Clarke held, that the proposed amendment was immaterial, and that the bill would

still contain no equity ; and as the complainant declined to amend in the particular specified in the previous decree, his bill was dismissed.

This decree is now assigned for error.

Thos. H. Lewis, for the appellant, contended,—

1. That the written agreement between the parties, in effect, is a mortgage.—Lanfair v. Lanfair, 18 Pick. 299; Nugent v. Riley, 1 Metcalf's R. 117; Manufacturers' and Mechanics' Bank v. Bank of Pennsylvania, 7 Watts & Serg. 335; Stewart v. Hutchins, 6 Hill's (N. Y.) R. 143; Foster v. Calhoun, Dudley's (S. C.) R. 75 ; Glass v. Ellison, 9 N. H. 69; Sims v. Canfield, 2 Ala. 555.

2. If it were uncertain whether the instrument was a mortgage or a conditional sale, the law will construe it to be a mortgage.—Turnipseed v. Cunningham, 16 Ala. 501, and cases there cited ; Sewall v. Henry, 9 ib. 85.

3. But, even if the instrument be construed to operate only as a conditional sale, complainant's remedy was in chancery, as his right to the negroes depended upon Raper's failure to perform his part of the contract, which failure was not then fully determined ; neither could he, at that time, have had the right to the immediate possession. As his property in the negroes was clearly insufficient to entitle him to commence an action at law, chancery, having once rightfully taken jurisdiction for one purpose, will retain it for all purposes.

4. Chancery has jurisdiction to relieve against every species of fraud.—Kennedy's Heirs and Executors v. Kennedy's Heirs, 2 Ala. 194. If the bill, therefore, did not sufficiently charge a fraudulent combination, the amendment offered should have been allowed.

G. C. Whatley, contra, made the following points :—

1. The bill was properly dismissed, because a party is not allowed to prosecute two suits, at the same time, for the recovery or enforcement of the same right.—1 Dan. Ch. Pr. 362; 2 ib. 962–5.

2. The contract must be construed by the law of the place where it was made.—Peake v. Yeldell, 17 Ala. 644; Jones

v. Jones, 18 *ib.* 250. This agreement was entered into in North Carolina, and was fully construed there in Love v. Raper, 4 Ired. Eq. R. 475. That decision is the law of the case.—Price v. Price, 23 Ala. 611; Weaver v. Weaver, *ib.* 790. The contract has none of the *indicia* of a mortgage about it: there was no proposition to borrow money; no debt existed; and the legal title did not pass by the instrument.—Duval's Heirs v. McLosky, 1 Ala. 729; Sewall v. Henry, 9 *ib.* 85.

3. The complainant has an adequate remedy at law, against either Thomas or Crook—against the former, an action for for damages; and against the latter, either detinue or trover. Walker and Wife v. McCulloch and Wife, 20 Ala. 391; Munroe v. Pritchett, 16 Ala. 785; Ellington v. Currie, 5 Ired. Eq. 23.

RICE, J.—We will not say, that an executory agreement cannot, in any case, have the same practical effect as an actual conveyance, so far as it may concern personal property. Franklin v. Hunt, 7 J. J. Marsh. 338; McDowell v. Hall, 2 Bibb, 610. But we hold it to be quite clear, that the agreement entered into by the appellant and Thomas Raper on the 18th March, 1844, shown in the exhibit to the bill, did not, *per se*, convey, transfer, or pass *the legal title* to the slaves therein mentioned, from the appellant to said Raper. On the contrary, that agreement shows that the appellant retained the legal title to the slaves, and that it was part of the contract that he should retain the legal title, until the sum of two thousand dollars, with interest, was recovered from said Raper, or from Wm. H. Thomas.—Bogan v. Martin, 8 Ala. R. 807; Barefield v. Murphy, at the present term.

If the appellant delivered the possession of the slaves to Raper, he did what he was not bound, either by the agreement or by law, to do. He must take the consequences of such voluntary act, and cannot found thereon a right to relief in a court of equity. If he chose to trust Raper with the possession of the slaves, and Raper thereupon asserted title in himself to them, in such manner as to make his possession adverse to the appellant; and such adverse possession has continued in Raper, and those deriving a claim from him, for

such a length of time as bars the action of detinue,—then the complainant is divested of his title, although he may never get his money. If, however, there is nothing to prevent his recovery in detinue, except the aforesaid agreement, that action will afford him a plain, adequate, and complete remedy. The agreement itself cannot prevent him from maintaining detinue for the slaves. His remedy is exclusively in a court of law, whether he goes for the money or the slaves.

The decree is affirmed, at the appellant's cost.